UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| JUDD HOFF, | No. 13-cv-1992 (JRT/LIB) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| DEPUTY JEFF EDWARDS, | |
| Defendant. | |

This matter came before the undersigned United States Magistrate Judge upon Defendant's Motion to Dismiss. [Docket No. 10]. The motion has been referred to the undersigned Magistrate Judge for a report and recommendation, (Order [Docket No. 22]), pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1. The Court held a hearing on the Motion on February 12, 2014. (Minute Entry [Docket No. 33]). For reasons outlined below, the Court recommends that Defendant's Motion to Dismiss, [Docket No. 10], be **GRANTED**, and that Plaintiff's claims be **DISMISSED without prejudice**.

I. BACKGROUND

Judd Hoff ("Plaintiff"), proceeding *pro se*, initiated this civil rights action on or about July 24, 2013, by filing his complaint, [Docket No. 1]. Subsequently, pursuant to this Court's Order, [Docket No. 4], on or about September 10, 2013, Plaintiff filed his Amended Complaint, [Docket No. 5], which is the operative complaint in this case, and in which Plaintiff generally alleges that Grant County Sheriff's Deputy Jeff Edwards violated his Fourth and Fourteenth Amendment right against unreasonable search and seizure during a traffic stop on January 26, 2013 (the "traffic stop").

On October 21, 2013, Defendant made his Motion to Dismiss, [Docket No. 10], and filed his Memorandum in Support thereof.  (Def.'s Mem. [Docket No. 12]).  Plaintiff filed his Response on November 4, 2013.  (Pl.'s Resp. [Docket No. 19]).  Defendant filed his Reply on November 18, 2013.  (Def.'s Reply [Docket No. 20]).  Subsequently, on November 26, 2013, and December 18, 2013, respectively, Plaintiff filed two exhibits: Exhibit A, [Docket No. 25-1], a record of the driver's license of Dwayne Michael Sturges ("Mr. Sturges"), the man from whom Plaintiff bought the vehicle he was driving at the time of the traffic stop; and Exhibit B, [Docket No. 30], containing a cover letter and the Grant County Sheriff's Office Incident Report of the investigation of the incident by Grant County Sheriff's Sergeant Jon Combs ("Sgt. Combs").

The Motion was taken under advisement pursuant to this Court's February 12, 2014, hearing.

## II.   MOTION TO DISMISS [Docket No. 10]

Defendant moves to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).  The Court finds that, on the face of his Amended Complaint, [Docket No. 5], Plaintiff has failed to allege facts sufficient to state a claim upon which relief can be granted.

### A. Facts

#### 1. The Record Presently Before the Court

When deciding a motion to dismiss, the Court considers "the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint." PureChoice, Inc. v. Macke, No. 07-cv-1290 (DWF/SRN), 2007 U.S. Dist. LEXIS 50284, at *13 (D. Minn. July 10, 2007) (Frank, J.) (citing Porous Media Corp. v. Pall Corp., 186 F.3d 1077,

1079 (8th Cir. 1999)). "[F]or the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true . . . ." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In the present case, the Court considered only Plaintiff's Amended Complaint, [Docket No. 5], and the dash-cam recording contained on the compact disc that Plaintiff attached to his Amended Complaint.

In particular, the Court did not consider Plaintiff's Exhibit A, [Docket No. 25-1], which appears to be a computer printout showing the driver's license status of Mr. Sturges on February 4, 2013, which presents evidence that is inconclusive as to any material issue presented by the current Motion.[1]  Additionally, the Court did not consider Defendant's Exhibit A, [Docket No. 20-2], which appears to be a screen capture of the driver's license data that was available to Defendant at the time of the traffic stop, because the Court's consideration of evidence outside the Complaint would transform the present Rule 12(b)(6) Motion into a Rule 56 motion for summary judgment.[2]  Finally, the Court did not consider Plaintiff's Exhibit B, [Docket No. 30], which consists of Sgt. Combs's incident report.[3]

**2. The Facts**

At approximately 1:15 p.m. on January 26, 2013, Plaintiff was driving to his place of

---

[1] First, Plaintiff's Exhibit A is dated February 4, 2013, and therefore, it does not provide evidence as to the status of Mr. Sturges's driver's license on January 26, 2013, the date of the traffic stop.  Additionally, Plaintiff's Exhibit A appears to show that Mr. Sturges at one time had a conditional Class B certification, and that the certification had been cancelled, making it inconclusive on the question of whether Defendant had information that Mr. Sturges had a cancelled license.

[2] If the Court were to consider Defendant's Exhibit A, it would support this Court's decision to grant Defendant's Motion to Dismiss.  Defendant's Exhibit A appears to show that Defendant was presented with information showing that the vehicle Plaintiff was driving at the time of the traffic stop belonged to a person whose driver's license, at least in part, had expired and/or had been cancelled.  (See Def.'s Ex. A [Docket No. 20-2]).  Such evidence would tend to support an inference that Defendant did, in fact, have reason to believe that the driver of the vehicle did not have a valid driver's license at the time of the traffic stop.

[3] If the Court were to consider Plaintiff's Exhibit B, it also would support this Court's decision to grant Defendant's Motion to Dismiss, as it tends to cast doubt on Plaintiff's claim that Defendant knew that Plaintiff was driving the vehicle and only pretended to believe that someone else was driving.  (See Pl.'s Ex. B [Docket No. 30], at 4, Plaintiff text message to Sgt. Combs: "did he know it was me when he made the stop . . . it was hard 2 tell").

business when he saw a Grant County Sheriff's patrol car, being driven by Defendant, turn around to follow him. (Am. Compl. [Docket No. 5], at 4-5). Plaintiff stopped his vehicle in front of his place of business, at which time Defendant pulled in behind him and activated his lights. (Id. at 4). Defendant exited his patrol car and approached Plaintiff's vehicle on foot, with his hand on his service weapon. (Id. at 5). Upon recognizing Plaintiff as the driver, Defendant expressed surprise and asked whether Plaintiff owned the vehicle. (Id.). Plaintiff produced the registration papers, which Defendant reviewed and then returned to Plaintiff. (Id. at 5-6). A recording of the encounter, which Plaintiff attached to his Amended Complaint, contains the following exchange:

> Defendant: Oh, Judd.
> Plaintiff: Hi Edwards.
> Defendant: Is this your car?
> Plaintiff: Yes.
> Defendant: Oh, it comes back to some other guy.
> Plaintiff: Well, I just bought it.
> Defendant: Oh did you? Oh, OK. Yeah, he's expired, so that's why – I didn't realize it was you.
> (Plaintiff provides the transfer papers showing his purchase of the vehicle.)
> Sorry to bother you.
> Plaintiff: Yeah.

(Id., Attach., at 1:02-1:25). This brief exchange—which lasted approximately 23 seconds—constitutes the entirety of the traffic stop.

Plaintiff alleges that Defendant lacked reasonable suspicion for effecting the traffic stop, and therefore, that Defendant violated his Fourth Amendment right against unreasonable search and seizure. (Am. Compl. [Docket No. 5], at 3, 9). Additionally, Plaintiff alleges that, as a result of this encounter, he has "suffered mental anguish, emotional distress, indignation, public humiliation, and shame, . . . [and] alienation of affection with [his] wife," all of which has required him to seek psychological counseling, psychiatric treatment, and medication. (Id. at 6).

4

Plaintiff further states that he no longer feels safe in his home or in the community, and that he has been told of "rumors about how the Sheriff's Office in Grant County is going to get me 'committed,' and 'locked away,' and that it's just a matter of time." (Id. at 6-7). Finally, Plaintiff alleges that Defendant "hates me and my family," and that the traffic stop was a part of the alleged efforts to persecute Plaintiff. (Id. at 7-8). He seeks declaratory judgment in his favor and $250,000.00 as damages for what he alleges was a violation of his constitutional rights. (Id. at 4).

### B. Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." In addressing a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim, "we look only to the facts alleged in the complaint and construe those facts in the light most favorable to the plaintiff." Riley v. St. Louis County of Mo., 153 F.3d 627, 629 (8th Cir. 1998), cert. denied 525 U.S. 1178 (1999), citing Double D Spotting Serv., Inc. v. Supervalu, Inc., 136 F.3d 554, 556 (8th Cir. 1998). All reasonable inferences must be drawn in favor of the nonmoving party. See Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulistic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it

'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), quoting Twombly, 550 U.S. at 556-67. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 664.

### C. Discussion

#### 1. Construing Plaintiff's claims

Because Plaintiff is proceeding *pro se*, the Court must "liberally construe[]" his Amended Complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'") (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Accordingly, although Plaintiff does not expressly invoke 42 U.S.C. § 1983 in his Amended Complaint, the Court construes Plaintiff's claims as arising under 42 U.S.C. § 1983, which provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Additionally, although Plaintiff's Amended Complaint identifies only the Fourth Amendment as the source of his right against unreasonable searches and seizures, the Court construes Plaintiff's claims as being brought pursuant to both the Fourth Amendment and the Fourteenth Amendment, which incorporates the right to be free from unreasonable searches and seizures as against the States.

#### 2. Analysis

To state an actionable civil rights claim pursuant to 42 U.S.C. § 1983, a plaintiff must

allege facts showing that the defendant somehow violated his federal constitutional rights while acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). In order to plead a cognizable 42 U.S.C. § 1983 claim against a particular defendant, a plaintiff must describe (a) what, specifically, that defendant allegedly did or failed to do, and (b) how that defendant's acts or omissions allegedly violated some specific right protected by the federal Constitution. See Beck v. LaFleur, 257 F.3d 764, 766 (8th Cir. 2001) (to state an actionable civil rights claim, a complaint must describe what, specifically, each named defendant did, or failed to do, that allegedly violated the claimant's constitutional rights); Ellis v. Norris, 179 F.3d 1078, 1079 (8th Cir. 1999) (civil rights claimants must plead facts showing each defendant's personal involvement in alleged constitutional wrongdoing).

In the present case, Plaintiff has met the first requirement by alleging that Defendant effected a traffic stop, which constitutes a "seizure" for purposes of the Fourth Amendment.[4] "[S]topping an automobile and detaining its occupants constitute a 'seizure' within the meaning of [the Fourth and Fourteenth] Amendments, even though the purpose of the stop is limited and the resulting detention quite brief." Delaware v. Prouse, 440 U.S. 648, 653 (1979) (citing, *inter alia*, Terry v. Ohio, 392 U.S. 1, 16 (1968) ("whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person")).

However, such a seizure would constitute a violation of Plaintiff's rights under the Fourth and Fourteenth Amendments only if it was an *unreasonable* seizure, i.e., if Defendant effected the traffic stop without any reasonable suspicion of unlawful conduct. See Stark v. Perpich, 590 F. Supp. 1057, 1059 (D. Minn. 1984) ("[I]n the absence of a reasonable, articulable suspicion of

---

[4] For purposes of the present Motion, because Defendant does not dispute that the incident was a "traffic stop" for Fourth and Fourteenth Amendment purposes, the Court assumes, without affirmatively finding, that it was, indeed, a traffic stop. However, the Court also observes that, accepting as true the facts alleged in the Amended Complaint, Plaintiff pulled over and stopped his vehicle voluntarily, *before* Defendant activated his lights. (Am. Compl. [Docket No. 5], at 4).

7

unlawful conduct, law enforcement officials cannot . . . stop vehicles randomly at the discretion of the police.") (citing Prouse, 440 U.S. at 663; United States v. Brignoni-Ponce, 422 U.S. 873, 884 (1975)); cf. Terry, 392 U.S. at 21 ("in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion").

In the context of a traffic stop, the U.S. Supreme Court has expressly stated that an officer's "reasonable suspicion that [a] driver is unlicensed" constitutes reasonable suspicion to effect a traffic stop.  Prouse, 440 U.S. at 661.[5]  Courts applying Terry have found that an officer's belief that a driver is not properly licensed provides reasonable suspicion to effect a traffic stop *even when the officer is mistaken about who is driving the vehicle*.  See, e.g., City of St. Paul v. Vaughn, 237 N.W.2d 365, 367-68 (Minn. 1975) (where "officers mistakenly believed the defendant to be his brother, . . . whom they knew . . . to be under a driver's license suspension," pursuit of the vehicle was consistent with rule established in Terry).  This Court concurs.

The facts alleged in the Amended Complaint appear to show that Defendant stopped the vehicle Plaintiff was driving because he believed the driver to be Mr. Sturges, whom Defendant believed had an expired or cancelled driver's license.  On the recording attached to Plaintiff's Amended Complaint, Defendant is heard to say that the vehicle was registered to "some other guy."  It is reasonable for a law enforcement officer performing a records check to presume that

---

[5] Additionally, although decisions of the Minnesota Supreme Court concerning Federal constitutional rights are not binding on this Court, this Court nonetheless observes that the Minnesota Supreme Court has repeatedly upheld the validity of traffic stops that are based on the officer's reasonable belief that a driver is driving without a valid license.  See, e.g., Minnesota v. Pike, 551 N.W.2d 919, 992 (Minn. 1996) ("it is not unconstitutional for an officer to make a brief, investigatory, Terry-type stop of a vehicle if the officer knows that the owner of the vehicle has a revoked license so long as the officer remains unaware of any facts which would render unreasonable an assumption that the owner is driving the vehicle"); Minnesota v. Duesterhoeft, 311 N.W.2d 866, 868 (Minn. 1981) (where "the officer believed that defendant's license was still under revocation and he reasonable suspected that the defendant was the person driving the truck . . . he did have reasonable suspicion" to effect the traffic stop).

the person driving the vehicle is the vehicle's registered owner. United States v. Chartier, 2013 U.S. Dist. LEXIS 150778, at *9-10 (N.D. Iowa Oct. 21, 2013) ("After [the officer] learned that the owner of the vehicle was a suspended driver, it was reasonable for [the officer] to believe the owner of the vehicle was also the driver, regardless of the fact that the driver was not in fact the owner of the vehicle.") (citing United States v. Phillips, 679 F.3d 995, 998 (8th Cir. 2012) ("'[T]he validity of a stop depends on whether the officer's actions were objectively reasonable in the circumstances, and in mistake cases the question is simply whether the mistake . . . was an objectively reasonable one.'" (quoting, in turn, United States v. Smart, 393 F.3d 767, 770 (8th Cir. 2005))).[6]

In the present case, the allegations in the Amended Complaint do not create a reasonable inference to support the conclusion that the Defendant did not objectively or reasonably believe that the vehicle was being driven by its registered owner, Mr. Sturges. From the contemporaneous recording of the encounter, Defendant expressed surprise upon identifying Plaintiff as the driver, and immediately explained that he expected to see "some other guy" behind the wheel. Plaintiff simply asserts his belief that Defendant "saw me and turned around," and that be believes that Defendant "pretended he hadn't recognized me," (Am. Compl. [Docket No. 5], at 4, 5), implying that Defendant knew who was driving the vehicle when he pulled it over. However, aside from this self-serving and conclusory allegation, Plaintiff alleges no specific facts from which this Court could plausibly infer that Defendant knew that Plaintiff was driving before he made the traffic stop at issue.

Consequently, this Court recommends that Defendant's Motion to Dismiss, [Docket No.

---

[6] See also Pike, 551 N.W.2d at 922 ("When an officer observes a vehicle being driven, it is rational for him or her to infer that the owner of the vehicle is the current operator.").

10], be **GRANTED**, and that Plaintiff's Amended Complaint, [Docket No. 5], be **DISMISSED without prejudice**.

### III. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED**:

1. That Defendant's Motion to Dismiss, [Docket No. 10], be **GRANTED**, as set forth above; and

2. That Plaintiff's Amended Complaint, [Docket No. 5], be **DISMISSED without prejudice**.

Dated: April 17, 2014　　　　　　　　　　　　　/s/ Leo I. Brisbois_____
　　　　　　　　　　　　　　　　　　　　　　　LEO I. BRISBOIS
　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

### N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by May 1, 2014**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within **fourteen (14) days** of service thereof.  Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.